Filed 8/23/16

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| CARA LYN GRECO,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>CLYDE C. GRECO, JR., Individually and as Trustee, etc.,<br><br>        Defendant and Appellant. | C078369, C078805<br><br>(Super. Ct. Nos. SC RD CV-PO-14-0180682; SC RD CV-PB-14-0028032) |

APPEAL from a judgment of the Superior Court of Shasta County, Baker and Bigelow, Judge. Affirmed in part and reversed in part.

Murphy, Pearson, Bradley & Feeney and John Paul Girarde for Defendant and Appellant.

Law Offices of Michael Brook, Michael J. M. Brook; Krankemann Law Offices, and Martin Reilley for Plaintiff and Respondent.

1

Defendant Clyde C. Greco, Jr., is the trustee of his parents' trust and the administrator of their estates. He used money from the trust and estates to fund litigation against his sister and others, purportedly to recover money they owed to the trust and estates. After he allegedly spent considerably more money on litigation than he could have possibly recovered, his sister, plaintiff Cara Lyn Greco, brought two lawsuits against him, one in the trial court and one in the probate court, to recover the money he spent, plus penalties. She claimed the prior litigation was a personal vendetta. Clyde Jr.[1] responded to each lawsuit by filing separate special motions to strike pursuant to Code of Civil Procedure section 425.16.[2] In each case, the special motion to strike was denied.

Denial of a special motion to strike is appealable under section 904.1. (§ 425.16, subd. (i).) On appeal, Clyde Jr. contends he met his burden on the first prong of section 425.16 by establishing that Cara Lyn's claims arose from protected petitioning activity, funding litigation. He further contends that Cara Lyn cannot meet her burden on the second prong of section 425.16 to submit evidence to establish a prima facie case of each claim because all her claims are barred by the litigation privilege of Civil Code section 47, subdivision (b).

We find the gravamen of most of Cara Lyn's claims is the alleged wrongful taking from the trust and estates and that is not a protected activity under section 425.16. The courts properly denied Clyde Jr.'s special motion to strike as to these claims. The one exception is Cara Lyn's claim for constructive fraud based on Clyde Jr.'s alleged misrepresentations about the underlying litigation. While Clyde Jr.'s statements about the litigation are protected activity, Clyde Jr. has not shown it is covered by the litigation

---

[1] Because the Greco family members share the same surname and have different roles in the various lawsuits, we use their first names for clarity and convenience. No disrespect is intended.

[2] Further undesignated statutory references are to the Code of Civil Procedure.

privilege.  Therefore, we remand for the probate court to determine whether Cara Lyn met her evidentiary burden under the second step of the section 425.16 analysis.

**FACTUAL AND PROCEDURAL BACKGROUND**

*The Greco Family*

Clyde C. Greco, Sr., and Helen Greco had nine children, including Clyde Jr., Cara Lyn, and Carla.  Clyde Jr. was appointed conservator of the person for his father in April 2010.  Another child, Claudia Greco, was appointed conservator of the person for Helen at the same time.  Clyde Sr. passed away March 3, 2011 and Helen passed away the following year on March 31, 2012.

At relevant times, Clyde Jr. was the sole trustee of the Clyde C. Greco and Helen J. Greco 1989 Revocable Trust, as well as administrator of their estates.  He also served as Helen's attorney-in-fact before her death.

*The Underlying Actions*

On July 23, 2010, in his representative capacity, Clyde Jr. brought an action against his sister Carla to obtain an accounting for the Bentley Partnership (the Bentley Partnership Action).  The Bentley Partnership was a partnership between Clyde Sr. and his daughter Carla to hold and manage certain property in Sonoma County.  The Bentley Partnership Action was dismissed without prejudice on October 10, 2012.

On August 18, 2011, Clyde Jr. filed an action against Carla and her sons Adam and Cody (the Citibank Action).  This action concerned $51,000 that Helen had given to Adam and Cody.  The case was tried and the jury returned a verdict in favor of Carla, Adam, and Cody.  Clyde Jr. appealed and the matter was settled in February 2015.

Clyde Jr. also brought an action against Cara Lyn (the San Diego Action), alleging Cara Lyn conspired with Carla, Adam, and Cody to obtain the $51,000.  The San Diego Action was consolidated with the Citibank Action and settled in 2013.

3

*Cara Lyn's Civil Lawsuit against Clyde Jr.*

Cara Lyn filed two lawsuits against Clyde Jr. in Sonoma County (the underlying litigation). The first was a civil action to recover amounts Clyde Jr. spent on litigation from April 2011 until Helen's death on March 31, 2012. The second was a petition filed in probate court to recover sums Clyde Jr. spent after Helen's death.

On June 5, 2014, Cara Lyn filed a complaint against Clyde Jr. for elder abuse (case No. 255566). The complaint alleged that from April 2011 through her death on March 31, 2012, Helen lacked capacity (Prob. Code, § 812), and was of unsound mind but not entirely without understanding (Civ. Code, § 39). The complaint further alleged that during that time period Clyde Jr. "took and/or obtained and/or appropriated money that belonged to" Helen and/or the trust, and Clyde Jr. "used and disposed of that money to pursue litigation against his sister," Carla and others, "that was not in the best interest of his principal," Helen or the trust. Using the money for legal fees and other litigation expenses "was for a wrongful use, including, without limitation, to pursue a personal vendetta against" Carla and others. Clyde Jr. did not inform Helen of the litigation or obtain her consent to pursue the litigation. The litigation included the Bentley Partnership Action and the Citibank Action.

The complaint alleged the Bentley Partnership was dissolved and wound-up at the end of 2009 and by then Carla had given her parents an accounting and they had told her they were satisfied. Carla offered to give Clyde Jr. an accounting if he would provide bank records and other financial information in his possession. Even after Carla provided an accounting, Clyde Jr. continued the litigation for 18 months. In pursuing this litigation, Clyde Jr. spent many times the amount of Carla's possible liability which was less than $32,000. In the Citibank Action, Clyde Jr. named Carla as a defendant even though he knew she had not been given any of the money. The complaint alleged that Clyde Jr. spent at least $190,000 on the Bentley Partnership Action and the Citibank Action and refused to return it despite a demand.

4

The first cause of action was for elder abuse under Welfare and Institutions Code section 15657.6, which provides for an award of attorney fees and costs for taking property from an elder or dependent adult for a wrongful purpose and failing to return it upon demand. The second cause of action was for elder abuse under Welfare and Institutions Code section 15610.30 and related statutes, taking property from an elder or dependent person for wrongful purpose or with intent to defraud. It was based on the allegation that Clyde Jr. "took, hid, appropriated, obtained, retained and/or assisted in taking, hiding, appropriating and retaining" the personal property of Helen and/or the trust "for a wrongful use and/or with the intent to defraud."

The complaint sought double and treble damages, attorney fees, costs, and punitive damages.

*Cara Lyn's Probate Petition against Clyde Jr.*

On June 6, 2014, Cara Lyn filed a petition in probate court against Clyde Jr. (case No. 86786). It alleged that from April 2012, Clyde Jr. "took and/or obtained and/or appropriated money that belonged to the Estate(s) of" Clyde Sr. or Helen, or the trust, and Clyde Jr. "used and disposed of that money to pursue and maintain litigation against his sister, Carla Greco, and others, that was not in the best interest of the Estates nor of the Trust." The petition contained allegations similar to those in the civil action about the Bentley Partnership Action, the Citibank Action, and the San Diego Action. The petition alleged that Clyde Jr. spent at least $665,653.10 on the three lawsuits from April 2012 through August 2013, and spent substantial additional sums thereafter. The total amount spent on the litigation, including amounts paid to Clyde Jr.'s law firm, "is likely in excess of one million dollars."

The first cause of action was for breach of fiduciary duty. It alleged that Clyde Jr. "engaged in a course of conduct, including without limitation, fomenting litigation and other wrongful acts, against certain beneficiaries of the Trust and/or estate, in an attempt to disinherit them, or any of them, and/or prevent questioning of his actions." It alleged

5

these actions breached "the duty to act with utmost good faith towards beneficiaries of the Trust and the Estate, the duty of loyalty to administer the Trust and the Estates for the sole interest of the beneficiaries, the duty to treat all beneficiaries equally or as required by the trust or estate documents, the duty to act in the interests of his principal as attorney-in-fact, the duty to act according to the Trust and Estates documents, the duty to avoid self-dealing, the duty to provide timely and accurate accountings, and the duty to avoid conflicts of interest." It alleged Clyde Jr. "acted with malice, oppression, recklessness or fraud," entitling Cara Lyn to recover punitive damages.

The second cause of action was for constructive fraud. It alleged Clyde Jr. "breached his duty to the beneficiaries of the Trust and/or Estates by misrepresenting the facts relating to the Actions and his motivations in bringing and maintaining same." It again sought punitive damages.

The third cause of action was for conversion. It alleged that Clyde Jr. "intentionally and substantially interfered with the Trust's and/or Estates' property by taking possession of the money and converting it to his own use and purposes."

*Transfer to Shasta County*

Clyde Jr.'s motion to transfer the civil action to Shasta County was granted. The parties stipulated to transfer the probate action to Shasta County.

*Clyde Jr.'s Special Motions to Strike*

Clyde Jr. responded to each of Cara Lyn's lawsuits with a special motion to strike pursuant to section 425.16. He contended that all of Cara Lyn's claims arose from actions and communications in the underlying litigation and therefore were protected activity, and Cara Lyn could not show that she was likely to prevail because all of his conduct was protected by the litigation privilege.

In opposition, Cara Lyn claimed the gravamen of the civil complaint was that Clyde Jr. took money that belonged to Helen to pursue his personal vendetta. She argued the gravamen of the probate petition was that by taking money to pursue his personal

6

vendetta, Clyde Jr. wrongfully took money in breach of his fiduciary duties. In supporting declarations, attorneys involved in the underlying litigation stated that based on a review of bank and financial records, Clyde Jr. took at least $190,000 from the trust and an additional $1,000,000 from the trust or estates or both after Helen's death for the underlying litigation. The amount at issue in the Bentley Partnership Action was $31,493.32 and the amount at issue in the Citibank Action was $51,000.

*Rulings*

Both the trial court and the probate court denied Clyde Jr.'s special motion to strike with almost identical reasoning. The trial court found the gravamen of the complaint was that Clyde Jr. converted money from Helen or the trust or both when Helen was an elder of unsound mind. The money was used to fund litigation against family members. The court found the protected activity (litigation) was merely incidental to the challenged conduct, which the court characterized as "disbursement of trust funds without consent." Cara Lyn's lawsuit attacked Clyde Jr.'s noncommunicative conduct of disbursement of funds, which involved only a private matter, and so was not covered by section 425.16.

The probate court found the gravamen of all causes of action in the petition was that Clyde Jr. converted money from the estate or trust and used the money to foment litigation against certain beneficiaries in an attempt to disinherit them and prevent them from questioning his actions. The court found "the clearly protected activity (here the litigation) was merely incidental to the challenged conduct (disbursement of estate and trust funds without consent)." The probate court also found Clyde's disbursement of estate and trust funds was noncommunicative conduct and since it involved a private, not public, matter, it was not covered by section 425.16.

## DISCUSSION

### I

*Anti-SLAPP Law*

The Legislature enacted section 425.16 due to its concern with "the disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances." (§ 425.16, subd. (a).) Section 425.16 provides for early dismissal of certain lawsuits known as "strategic lawsuits against public participation" through a special motion to strike. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 85 (*Navellier*).) Section 425.16 "shall be construed broadly." (§ 425.16, subd. (a).) "Legislative history materials respecting the origins of section 425.16 indicate the statute was intended broadly to protect, inter alia, direct petitioning of the government and petition-related statements and writings—that is, 'any written or oral statement or writing made before a legislative, executive, or judicial proceeding' (§ 425.16, subd. (e)(1)) or 'in connection with an issue under consideration or review' (*id.*, subd. (e)(2)) by such." (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1120.)

Determining whether to grant the special motion to strike is a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. (§ 425.16, subd. (b)(1).)" (*Navellier, supra,* 29 Cal.4th at p. 88.) "If the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim. [Citations.]" (*Ibid.*) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Id.* at p. 89.)

Under the first step of the anti-SLAPP analysis, "the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or

petitioning activity." (*Navellier, supra,* 29 Cal.4th at p. 89.) "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Id*. at p. 92.)

"As courts applying the anti-SLAPP statute have recognized, the 'arising from' requirement is not always easily met. [Citations.]" (*Equilon Enterprises v. Consumer Cause, Inc*. (2002) 29 Cal.4th 53, 66.) The "arising from" requirement requires more than simply some relationship between the cause of action and the protected activity. It is not enough that the cause of action was in response to or triggered by the protected activity. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 77-78.) "[A] cause of action arises from protected conduct if the *wrongful*, *injurious act(s)* alleged by the plaintiff constitute protected conduct. [Citations.]" (*Old Republic Construction Program Group v. The Boccardo Law Firm, Inc*. (2014) 230 Cal.App.4th 859, 868 (*Old Republic*).) In deciding if this requirement is met, "the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b).)

In the anti-SLAPP statute, "an 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

9

"[I]n order to establish the requisite probability of prevailing (§ 425.16, subd. (b)(1)), the plaintiff need only have ' "stated and substantiated a legally sufficient claim." ' [Citations.] 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' [Citations.]" (*Navellier, supra,* 29 Cal.4th at pp. 88-89.)

"The trial court's ruling on a section 425.16 motion is reviewed de novo. [Citation.] We exercise our independent judgment to determine not only whether the anti-SLAPP statute applies, but whether the complainant has established a reasonable probability of prevailing on the merits. [Citation.]" (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 22.)

## II

### *Arising Out of Protected Activity*

A. *Claims of Elder Abuse*

Both of Cara Lyn's claims for elder abuse in the civil action allege that Clyde Jr. "took and/or obtained and/or appropriated money that belonged to Helen J. Greco and/or the Trust." "[A] cause of action can only be said to arise from protected conduct if it alleges at least one *wrongful* act—conduct allegedly *breaching a duty and thereby injuring the plaintiff* —that falls within the act's definition of protected conduct." (*Old Republic, supra,* 230 Cal.App.4th at p. 869.) The wrongful act that is the basis of the elder abuse claims is the taking of money from the trust and estates.

Clyde Jr. argues the gravamen of Cara Lyn's claims of elder abuse is that he "used and disposed of that money to pursue litigation against his sister." Funding civil litigation is communicative conduct for purposes of section 425.16. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.) He contends the alleged motive for the litigation, a personal vendetta, is irrelevant.

10

Clyde Jr. contends the applicable case is *Tuszynska v. Cunningham* (2011) 199 Cal.App.4th 257 (*Tuszynska*). There, the plaintiff was a female attorney who provided legal services to members of the Riverside Sheriffs' Association (RSA) under the auspices of the Riverside Sheriffs' Association Legal Defense Trust (RSA-LDT). She filed suit against the RSA, RSA-LDT, and its administrator, claiming that she received fewer case referrals because she was a woman. Defendants moved to strike the entire complaint under the anti-SLAPP statute and the trial court denied the motions. (*Id.* at p. 261.) The appellate court found defendants met their burden on the first prong of section 425.16 and remanded for consideration of whether plaintiff met her burden of showing a reasonable probability of prevailing on the merits. (*Id.* at p. 272.)

The court rejected the argument that the gravamen of plaintiff's claim was gender discrimination. Instead, it found the allegations that defendants discriminated against plaintiff by failing to assign cases to her were based on protected activities. (*Tuszynska, supra,* 199 Cal.App.4th at pp. 267-268.) "First, defendants' attorney selection and litigation funding decisions constitute statements or writings 'made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . .' (§ 425.16, subd. (e)(2).) As such, the decisions constitute protected speech and petitioning activities, even though they were made on behalf of RSA members and clients of the RSA–LDT and not on behalf of defendants themselves. [Citations.]" (*Id.* at p. 268.)

The court rejected plaintiff's argument that "her allegations of gender discrimination are not based on any such communications but are instead based on defendants' purportedly distinctive 'conduct' in failing to assign cases to her 'because she is a woman.' " (*Tuszynska, supra,* 199 Cal.App.4th at p. 268.) The court found a distinction between conduct based on the motive underlying the conduct was "untenable in the anti-SLAPP context because it is at odds with the language and purpose of the anti-SLAPP statute. The statute applies to claims 'based on' or 'arising from' statements or

writings made in connection with protected speech or petitioning activities, regardless of any motive the defendant may have had in undertaking its activities, or the motive the plaintiff may be ascribing to the defendant's activities. [Citations.]" (*Id.* at pp. 268-269.)

*Tuszynska* does not aid Clyde Jr.'s position; in fact, it undercuts his argument. In *Tuszynska,* the alleged wrongful act was a protected activity, attorney selection and funding decisions. Here the wrongful act is the taking of trust and estate funds. Clyde Jr.'s alleged motive for taking the funds--to fund a personal vendetta by means of litigation--is irrelevant, just as the alleged motive of gender discrimination in *Tuszynska* was irrelevant. Although Cara Lyn alleges the underlying litigation was wrongful because it was a vendetta and cost many times more than the amount of possible recovery, she is not claiming the injurious act was the underlying litigation. Her claim is not for malicious prosecution. Instead, it is for recovery of funds (plus penalties) for monies wrongfully taken.

The case on which the trial court relied, *Old Republic, supra,* 230 Cal.App.4th 859, is more applicable to the situation here. In *Old Republic*, a law firm filed a lawsuit on behalf of a man injured in a motor vehicle accident during the course of his employment. (*Id.* at p. 862.) Old Republic was the worker's compensation insurer for the man's employer and paid him benefits. Old Republic filed a complaint in intervention for reimbursement. The law firm settled the personal injury lawsuit, but Old Republic's claim to reimbursement was not resolved. The settlement proceeds were placed in the law firm's client account and Old Republic and the injured man's attorneys agreed the signatures of both parties were necessary to release the funds. (*Id.* at p. 863.) Subsequently, Old Republic withdrew both its complaint in intervention and its motion for apportionment, leaving no pleading before the court that sought affirmative relief. (*Id.* at pp. 863-864.) Taking the position that Old Republic had given up its right to reimbursement, the law firm disbursed the settlement funds to the injured client. (*Id.* at p. 864.) Old Republic brought suit against the law firm for breach of contract, fraud,

12

negligence, and declaratory relief. The law firm filed a special motion to strike. (*Id.* at p. 865.) The trial court granted it as to the fraud claim, but denied it as to the other claims. (*Id.* at p. 866.)

The appellate court affirmed. (*Old Republic, supra,* 230 Cal.App.4th at p. 878.) Reviewing the law, the court concluded, "a cause of action can only be said to arise from protected conduct if it alleges at least one *wrongful* act—conduct allegedly *breaching a duty and thereby injuring the plaintiff*—that falls within the act's definition of protected conduct." (*Id.* at p. 869.) The fraud cause of action arose from the settlement (a protected activity) because "[t]he underlying wrongful conduct was defendants' alleged *entry into the stipulation* without the intention to be bound by it, thereby inducing Old Republic to do likewise and depriving it of control over the settlement funds." (*Ibid.*) The same was not true of the breach of contract, negligence, and declaratory relief causes of action. Although those causes of action referred to and may have depended upon the stipulation, "they do not assert that there was anything wrongful about that conduct. . . . With respect to the remaining three claims, however, there was nothing wrongful about the stipulation itself; entry into it is not the injurious conduct alleged. Rather, under those three causes of action Old Republic's injury arose from defendants' withdrawal of the funds that were the subject matter of the stipulation." (*Ibid.*)

Here it was Clyde Jr.'s withdrawal of the funds from the trust and estates that was the alleged wrongful act, just as in *Old Republic.* Although Cara Lyn did allege the underlying lawsuits were wrongful, her claim for recovery was not based on the wrongful act of pursuing meritless or wasteful litigation, but on taking trust and estate funds.

Clyde Jr. argues the gravamen of the complaint cannot be the disbursement of funds because "it is undisputed that Appellant had the power to disburse funds in his representative capacities. [Citations.] Thus, the mere disbursement of Assets, without more, is proper and cannot give rise to a cause of action. Disbursing the Assets only becomes legally actionable when put to an allegedly wrongful use, which, in this case, is

13

funding the Underlying Actions." Although it is not without surface appeal, upon close examination this argument fails.

The *activity* that gave rise to Clyde Jr.'s asserted liability was the taking, just as the disbursement of settlement funds was the gravamen of the claim in *Old Republic*. The activity itself does not have to be wrong or illegal. Funding the litigation solely to pursue a vendetta was the *reason* the activity (i.e., the taking) was allegedly wrongful, just as the failure to obtain signatures of both parties was the reason the disbursement of settlement funds in *Old Republic* was allegedly wrongful. The test under section 425.16 focuses on the "the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier, supra,* 29 Cal.4th at p. 92.)

The taking, whether or not it is actually wrongful and why, does not fall within any of the conduct described in subdivision (e) of section 425.16. The taking was not a "written or oral statement or writing" as required for subdivision (e)(1) through (3) of section 425.16. Only "one of the four categories of protected activity covers conduct (§ 425.16, subd. (e)(4) ['conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech']) and that type of protected activity must have taken place 'in connection with a public issue or an issue of public interest.' " (*PrediWave Corp. v. Simpson Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1226.) While the taking of trust and estate funds to fund the underlying litigation may be considered "conduct in furtherance of the exercise of the constitutional right of petition," it was not "in connection with a public issue or an issue of public interest." "The most commonly articulated definitions of 'statements made in connection with a public issue' focus on whether (1) the subject of the statement or activity precipitating the claim was a person or entity in the public eye; (2) the statement or activity precipitating the claim involved conduct that could affect large numbers of people beyond the direct participants; and (3) whether the statement or activity precipitating the claim involved a topic of

14

widespread public interest. [Citations.]" (*Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 898.) The context of the underlying litigation does not fall within any of these three categories. As a private matter among a small group of people involving a family trust and estates, it did not involve a public issue or an issue of public interest.

The trial court did not err in denying Clyde Jr.'s special motion to strike in the elder abuse case.

B. *Claim for Breaches of Fiduciary Duty*

The cause of action in the probate petition for breach of fiduciary duty contains general allegations, similar to those in the civil action, about Clyde Jr. wrongfully taking money from the trust and estates. It also, however, contains the allegation that Clyde Jr. "engaged in a course of conduct, including, without limitation, fomenting litigation and other wrongful acts, against certain beneficiaries of the Trust and/or estate, in an attempt to disinherit them, or any of them, and/or prevent questioning of his actions." It alleges that Clyde Jr. breached his fiduciary duties, including "the duty of loyalty to administer the Trust and the Estates for the sole interest of the beneficiaries, the duty to treat all beneficiaries equally or as required by the trust or estate documents, the duty to act in the interests of his principal as attorney-in-fact, the duty to act according to the Trust and Estates documents, the duty to avoid self-dealing, the duty to provide timely and accurate accountings, and the duty to avoid conflicts of interest."

While these allegations appear to challenge the bringing of the underlying litigation, a protected activity, the petition limits the act that caused injury to the taking. In seeking damages and penalties, the petition alleges that Clyde Jr. "in bad faith wrongfully took, and/or concealed, and/or disposed of, property belonging to a principal under a power of attorney" and "in bad faith wrongfully took, and/or concealed, and/or disposed of, property belonging to a trust and/or estate(s)." There is no allegation that the "fomenting litigation" or the alleged attempt to disinherit certain beneficiaries *caused any injury*; the only "*wrongful, injurious act(s)* alleged by the plaintiff" (*Old Republic, supra,*

15

230 Cal.App.4th at p. 868) is the *taking*.  Thus, the gravamen of this cause of action for purposes of section 425.16 is the taking itself, not the reason for the taking which is alleged to have made the taking wrongful.

For the same reasons we detailed *ante* in our discussion of the elder abuse claims, the trial court did not err in denying the special motion to dismiss.

C.  *Claim for Constructive Fraud*

The cause of action for constructive fraud alleged that Clyde Jr. "breached his duty to the beneficiaries of the Trust and/or the Estates by misrepresenting the facts relating to the Actions and his motivations in bringing and maintaining same."  It further alleges the beneficiaries of both the trust and the estates "have suffered harm and Defendant Clyde Greco, Jr.'s wrongful conduct was a substantial factor in causing this harm."  Unlike the other causes of action, the gravamen of this cause of action is not the taking, but alleged misrepresentations about the underlying litigation.

An act is "in furtherance of a person's right of petition" if it is "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body."  (§ 425.16, subd. (e)(2).)  "[A] statement is 'in connection with' litigation under section 425.16, subdivision (e)(2) if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation."  (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1266.)  By "misrepresenting the facts relating to the Actions" to the beneficiaries, Clyde allegedly made statements relating "to the substantive issues of the litigation" "to persons having some interest in the litigation." (*Ibid.*)  This cause of action arises from protected activity.  Thus, Clyde Jr. met his burden on the first step of the section 425.16 analysis on the cause of action for constructive fraud.

D.  *Claim for Conversion*

The cause of action for conversion alleges that Clyde Jr. "intentionally and substantially interfered with the Trust's and/or the Estates' property by taking possession

16

of the money and converting it to his own use and purposes." Again, the gravamen of this cause of action is the taking and it involves only a private dispute, not an issue of public importance or interest. The trial court did not err in denying Clyde Jr.'s special motion to strike this cause of action.

III

*Probability of Prevailing on the Merits*

Clyde Jr. contends that Cara Lyn cannot show a probability that she will prevail on the merits because all of her claims are barred by the litigation privilege. We have found Clyde Jr. failed to show that Cara Lyn's claims arose from a protected activity, except the constructive fraud claim. Accordingly, we limit our consideration of the merits prong of section 425.16 to that claim. Although the probate court did not consider this second step in the section 425.16 analysis, we may do so. (*Thayer v. Kabateck Brown Kellner LLP* (2012) 207 Cal.App.4th 141, 159.) Since application of the litigation privilege presents a question of law, without any factual or evidentiary issues, we will consider whether it defeats the fraud claim.

The litigation privilege, found in Civil Code section 47, subdivision (b)(2), "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.) The privilege "immunizes defendants from virtually any tort liability (including claims for fraud), with the sole exception of causes of action for malicious prosecution." (*Olsen v. Harbison* (2010) 191 Cal.App.4th 325, 333.) In the anti-SLAPP context, the litigation privilege presents "a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 323.) "Any doubt as to whether the privilege applies is resolved in favor of applying it. [Citations.]" (*Adams v. Superior Court* (1992) 2 Cal.App.4th 521, 529.)

17

Although there is a relationship between the litigation privilege and section 425.16, "the two statutes are not substantively the same." (*Flatley v. Mauro, supra,* 39 Cal.4th at p. 323.) "[T]he litigation privilege is an entirely different type of statute than section 425.16. The former enshrines a substantive rule of law that grants absolute immunity from tort liability for communications made in relation to judicial proceedings [citation]; the latter is a procedural device for screening out meritless claims [citation]." (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 737.)

Clyde Jr. has failed to show the litigation privilege is applicable to the cause of action for constructive fraud. The petition does not identify to whom Clyde Jr. made the alleged misrepresentations, but presumably he made the statements to some beneficiaries. It is unknown whether such beneficiaries were participants in the underlying litigation, or merely had "some interest in the litigation." (§ 425.16, subd. (e).) Statements "to nonparticipants in the action are generally not privileged under [Civ. Code] section 47(2), and are thus actionable unless privileged on some other basis." (*Silberg v. Anderson, supra,* 50 Cal.3d at p. 219.) Further, neither the probate petition nor the declarations offered in support or opposition to the section 425.16 motion reveal what the alleged misrepresentations were or whether the statements were made "to achieve the objects of the litigation" or for another reason, such as to justify Clyde Jr.'s actions.

Because the probate court concluded Clyde Jr. failed to meet the first prong of the section 425.16 analysis, it did not address whether Cara Lyn met her evidentiary burden under the merits prong of the statute. Although we have addressed the legal issue of the applicability of the litigation privilege, which was briefed by the parties, we decline to otherwise address the merits and complete the analysis under the second prong of the statute. The court did not rule on the several objections to the admissibility of the parties' evidence and the parties did not address the issue on appeal. "Under such circumstances, the more prudent course is to remand the matter to the trial court to determine in the first instance whether [Cara Lyn] demonstrated a reasonable probability of prevailing on the

18

merits of [her] cause[] of action.  [Citations.]"  (*Hunter v. CBS Broadcasting, Inc.* (2013) 221 Cal.App.4th 1510, 1527-1528.)

## DISPOSITION

In case No. SC RD CV-PO-14-0180682 (appellate case No. C078369), the order denying Clyde Jr.'s special motion to strike is affirmed.  Cara Lyn shall recover her costs on appeal.  (See Cal. Rules of Court, rule 8.278(a).)

In case No. SC RD CV-PB-14-0028032(appellate case No. C078805), the order denying Clyde Jr.'s special motion to strike is reversed as to the second cause of action for constructive fraud.  In all other respects, the order is affirmed.  The matter is remanded to the trial court with directions to determine whether Cara Lyn met her evidentiary burden of demonstrating a reasonable probability of prevailing on the merits as to her claim for constructive fraud.  The parties shall bear their own costs on appeal. (See Cal. Rules of Court, rule 8.278(a).)


_____/s/_____
Duarte, J.



We concur:


_____/s/_____
Hull, Acting P. J.



_____/s/_____
Butz, J.

19