Filed 3/1/21  Infinitif Auto Sales v. Irkhin CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| INFINITIF AUTO SALES, INC., et al.,<br><br>    Plaintiffs, Cross-defendants and Respondents,<br><br>          v.<br><br>MICHAEL IRKHIN,<br><br>    Defendant, Cross-complainant and Appellant. | G056565<br><br>(Super. Ct. No. 30-2017-00959239)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, David R. Chaffee, Judge.  Reversed.

Marcus Jackson for Defendant, Cross-complainant and Appellant.

Scali Rasmussen, Christian J. Scali, John P. Schaedel and Shayna E. Dickstein for Plaintiffs, Cross-defendants and Respondents.

# INTRODUCTION

Michael Irkhin appeals from an order granting an anti-SLAPP motion by his former employer, Infinitif Auto Sales, Inc., and its general manager, Omar Gulam, striking Irkhin's first cause of action for defamation. Irkhin alleged Infinitif and Gulam defamed him by spreading rumors in the local auto industry that Irkhin had embezzled money from the dealership and engaged in other dishonest practices. Infinitif based a lawsuit on these alleged dishonest practices, and Irkhin cross-complained against Infinitif and Gulam for defamation, among other causes of action not involved in this appeal.

Infinitif and Gulam moved to strike the defamation cause of action under Code of Civil Procedure section 425.16, the anti-SLAPP statute.[1] They argued that the allegedly defamatory statements were protected conduct because they were made in connection with an issue under consideration or review by a judicial body (§ 425.16, subd. (e)(2)), i.e., the complaint for embezzlement and fraud by Infinitif against Irkhin. The court agreed and granted the motion.

We reverse. Infinitif and Gulam failed to carry their burden to show the statements were protected conduct as defined by the anti-SLAPP statute. They failed to show that the statements were directed to persons having some interest in the litigation, and there is no other connection between the statements and the lawsuit. Neither respondent admitted making the statements to anyone. Gulam explicitly denied telling anyone that Irkhin was dishonest. The people whom Irkhin alleged heard the defamatory statements were outside vendors, not Infinitif employees, and the declarations filed to oppose the motion were also from outside vendors. The moving parties supplied no evidence that the statements were directed at people with an interest in the litigation itself; making the statements was therefore not petitioning conduct protected by the anti-SLAPP statute.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

## FACTS

Infinitif operates a car dealership in Santa Ana. Irkhin worked for Infinitif as a used car buyer. He was fired on December 4, 2017. Infinitif filed suit against him on the same day, alleging that he defrauded the company by overpaying for used cars and splitting the excess with the seller, by selling vehicles for a higher price than he reported and keeping the difference, and by converting cars bought with Infinitif's money to his own use.

Irkhin cross-complained against Infinitif and Gulam, its general manager, in February 2018. The first cause action in the cross-complaint alleged that Infinitif and Gulam defamed Irkhin by "falsely accus[ing him] of engaging in fraudulent business practices including stealing money from the company during the time he worked for [Infinitif]." The cross-complaint also alleged that Infinitif's upper management told vendors Irkhin was taking bribes, had inflated vehicle prices, had stolen $800,000 from Infinitif, had sold wholesale vehicles for more than the invoice price, and had taken a dealership car for his personal use. According to the cross-complaint, the statements were made to "vendor representatives," including the owner of a company that had been a buyer for Infinitif since 2014 and "other persons (both inside and outside of [Infinitif])."[2]

Infinitif and Gulam filed an anti-SLAPP motion, basing their claim of protected conduct on section 425.16, subdivision (e), "(2) any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body . . . ." The record does not contain any declarations filed to support the motion.

With respect to protected conduct, Infinitif and Gulam argued that Irkhin had alleged defamatory statements made to "vendors," and "[a]s [Infinitif's] business partners, those vendors have great interest in [Infinitif's] complaint, given that Irkhin

---

[2] The court misread this portion of the complaint. The person to whom the statements were allegedly made was not Infinitif's owner, but rather the owner of a company that did business with Infinitif.

3

likely participated in dozens (if not hundreds) of transactions with those vendors." Infinitif and Gulam also argued that the statements were made "in anticipation of litigation" "genuinely contemplated," i.e., the complaint for conversion, fraud, and breach of fiduciary duty filed in December 2017. The record does not contain any declarations to support the motion.

Irkhin opposed the motion, arguing that the specific allegations of defamation in the cross-complaint (taking bribes, stealing $800,000, etc.) were not alleged in Infinitif's complaint; therefore, these statements could not have been under consideration by a judicial body. He also filed declarations from two non-parties – a former employee and the owner of a tire company – who confirmed that rumors were circulating regarding Irkhin's alleged fraud and theft.[3] Neither declarant mentioned being involved in any investigation or pre-litigation activities on Infinitif's behalf.

In the reply memorandum, the moving parties refused to concede they had made the allegedly defamatory statements. But they argued the statements were protected conduct, because they were made in connection with an issue under review by a judicial body, i.e., the complaint.

Three declarations accompanied the reply. The first was from an attorney who had taken Irkhin's deposition. She stated that Irkhin testified he had been convicted of felonies in 2006. The second declaration was by Infinitif's chief financial officer, who stated his belief that Irkhin had engaged in "numerous dishonest acts." The declarant was not more precise about the acts, and he did not state he had communicated his belief to anyone. Finally, Gulam declared that he never told anyone in the auto industry that Irkhin engaged in fraud or was dishonest. He denied making the statements attributed to him in the unsigned declaration supporting Irkhin's opposition.

---

[3] A third declaration was filed recounting a conversation between the declarant and Gulam in which Gulam supposedly voiced the same accusations – stealing money, taking bribes, etc. – that formed the basis of the cross-complaint. This declaration was, however, unsigned.

The trial court granted the motion. The court reasoned that making the statements was protected conduct because they were "made to persons with the dealership, who had a legitimate reason to want to know what happened to their used car manager. There was much turmoil at the dealership in those days, and lest everyone fear a fire sale some explanation was proper." The court struck the first cause of action for defamation.

## DISCUSSION

Analysis of an anti-SLAPP motion involves two steps. First, the court must determine whether the defendant's conduct as alleged in the complaint arises from conduct protected by the statute, i.e., petitioning or free speech activity. The defendant bears the burden of showing protected conduct. If the defendant makes the required showing, then the plaintiff must present evidence of the probability of prevailing, that is, a "prima facie factual showing sufficient to sustain a favorable judgment." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384-385.) The standard of review for orders granting or denying anti-SLAPP motions is de novo, and we engage in the same two-step analysis as the trial court. (*Computer Xpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999.)

The explanation for granting the motion shows a confusion between the conduct protected by section 425.16, subdivision (e)(2), and the conditional privilege of Civil Code section 47, subdivision (c).[4] The two statutes have different goals and requirements.

Civil Code section 47, subdivision (c), is a substantive rule of law codifying a venerable common-law privilege based on an acknowledgement that, under some circumstances, "free and open communication should transcend concern for reputation." (Smolla, 2 Law of Defamation (2d ed. 2019) § 8:38.) One such privilege applies to

---

[4] Civil Code section 47 provides in pertinent part, "A privileged publication . . . is one made: [¶] . . . [¶] (c) In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information."

statements made to protect the speaker's own legitimate interests, analogous to the common-law privilege to use self-defense against physical attack or self-help to defend property. (*Id.*, § 8.47.) This interest is a specific one – not idle curiosity or an interest in gossip – "such as where the parties to the communication share a contractual, business, or similar relationship or the defendant is protecting his own pecuniary interest." (*Bikkina v. Mahadevan* (2015) 241 Cal.App.4th 70, 90; see *Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 287; 5 Witkin, Summary of Cal. Law (11th ed. 2017) § 698, p. 960.) If the interested-person privilege applies, a speaker or writer is not liable for a defamatory statement. (Civ. Code, § 47, subd. (c).)

By contrast, section 425.16 is a procedural statute. "The purpose of section 425.16 is to protect the valid exercise of constitutional rights of free speech and petition from the abuse of the judicial process [citation], by allowing a defendant to bring a motion to strike any action that arises from any activity by the defendant in furtherance of those rights." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 322-324 (*Flatley*).) The statute provides a "procedural device for screening out meritless claims." (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 737; see *Garretson v. Post* (2007) 156 Cal.App.4th 1508, 1517 ["[W]e reject the broad conclusion that conduct deemed communicative for purposes of Civil Code section 47 automatically qualifies as constitutionally protected speech under section 425.16."].)

The trial court granted the motion because "persons with the dealership" who might "fear a fire sale" had a legitimate reason for wanting to know what happened to Irkhin. It is not clear whether "persons with the dealership" included outside vendors or only Infinitif employees. But regardless of who these "persons" were, it is clear the court was applying the interested-person privilege of Civil Code section 47, subdivision (c), to determine whether the conduct alleged in Irkhin's cross-complaint was protected under section 425.16, subdivision (e)(2). As the court explained in *Flatley*, privilege is

6

relevant to the second step of the anti-SLAPP analysis – probability of prevailing – but not necessarily to the first step. (*Flatley, supra,* 39 Cal.4th at p. 323.)

A cause of action must "arise" from an act in furtherance of the right of free speech or petition to qualify for anti-SLAPP protection. (§ 425.16, subd. (b)(1).) As courts have often observed, the fact that a lawsuit followed the alleged conduct does not necessarily mean the lawsuit arose from it. (See, e.g., *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 66; *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 77-78 [not enough that cause of action triggered by protected conduct].)

The issue to be determined in the first step is whether the alleged statements were statements "made in connection with an issue under consideration or review by . . . a judicial body." (§ 425.16, subd. (e)(2).) A statement is made "in connection with" an issue under consideration by a judicial body if it relates to substantive issues in the judicial proceedings and is directed at persons having some interest in the judicial proceedings. For example, in *Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043, 1055, a "litigation update" email that "describe[d] the parties' contentions and court rulings, and [was] directed to individuals who had some involvement in the parties' litigation" was a protected writing.

Both the court and respondents relied heavily on *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255 (*Neville*). In that case, an attorney representing a company embroiled in a dispute with a former employee wrote a letter to the company's existing and former customers, informing them that the former employee had violated his employment and confidentiality agreement and was, in effect, about to be sued. The letter further warned the recipients that "'[i]n order to avoid any involvement in litigation that my [*sic*] arise between us and Mr. Neville (as material witness or otherwise), we suggest that you have no further dealings with Mr. Neville . . . . You should know that any monies paid to him . . . properly belong to [the company], and we shall, if necessary

7

seek an accounting of all monies paid out.'" (*Id*. at p. 1260.)  The letter was sent out in May 2005, and the company filed suit in September.  (*Ibid.*)

The court found that the letter "related directly to [the company's] claims for breach of contract and misappropriation of trade secrets against Neville.  Neville was alleged to have misappropriated . . . customer lists.  The Letter was directed to . . . persons whom [the company] reasonably could believe had an interest in the dispute as potential witnesses to, or unwitting participants in, Neville's alleged misconduct.  The Letter constituted an attempt to prevent further misuse of [the company's] proprietary information, and thereby mitigate [its] potential damage."  (*Neville, supra,* 160 Cal.App.4th at pp. 1267-1268.)  Like the recipients of the communications in the other cases cited in *Neville*, the letter was related "to the substantive issues in the litigation and [was] directed to persons having some interest in the litigation."  (*Id.* at p. 1266; see *Greco v. Greco* (2016) 2 Cal.App.5th 810, 825-826 [statements made to beneficiaries of trust regarding reasons for trust litigation protected conduct].)

In this case, however, Infinitif and Gulam presented no evidence that the persons to whom the allegedly defamatory statements were directed had any interest at all in the pending litigation.  In fact, Gulam denied ever making the statements to anyone, and the moving parties presented no evidence that anyone else made them.  So there was no evidence that the persons who heard the statements had an interest in the litigation.  Although it is possible to surmise that "persons with the dealership" may have been curious to know what happened to Irkhin, their curiosity does not translate into an interest in the lawsuit itself, as witnesses, as participants, or in any other capacity.  (Cf. *Neville, supra,* 160 Cal.App.4th at p. 1266.)

Since Infinitif and Gulam did not carry their burden to show that the statements were directed at persons having some interest in the litigation between appellant and respondents, they did not meet the requirements of the first step of the anti-

8

SLAPP analysis.  Accordingly, we do not address the second step – Irkhin's probability of prevailing.  (See *Freeman v. Schack* (2007) 154 Cal.App.4th 719, 733.)

**DISPOSITION**

The order granting the anti-SLAPP motion and striking the first cause of action is reversed.  Appellant is to recover his costs on appeal.


BEDSWORTH, ACTING P. J.

WE CONCUR:


ARONSON, J.


GOETHALS, J.