Filed 5/16/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CHARLES E. YEAGER et al., | C079897 |
| Plaintiffs and Respondents, | (Super. Ct. No. 34201500177460CUBCGDS) |
| v. | |
| PETER HOLT et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Raymond M. Cadei, Judge. Affirmed.

Holt Law Firm and Peter T. Holt, in pro. per., for Defendants and Appellants.

Williams Iagmin and Jon R. Williams for Plaintiffs and Respondents.

Defendants Peter Holt, Holt Law Firm, and Bethany Holt (collectively Holt, except as noted) appeal from an order denying their special motion to strike (also known as an anti-SLAPP--Strategic Lawsuit Against Public Participation--motion).[1]  Peter Holt and his law firm briefly represented Charles E. and Victoria Yeager (collectively Yeager, except as noted) and successfully sued Victoria Yeager to obtain his fees in an action known as *Holt v. Yeager* (Super. Ct. Nevada County, No. L76533).[2]  Yeager then sued Holt, alleging professional negligence, misappropriation of name, and other claims.  Holt moved to declare Yeager's suit to be a SLAPP suit.  The trial court found this suit does not chill protected expressive conduct or free speech on an issue of public interest.  We agree and affirm.[3]

---

[1]  Code of Civil Procedure, section 425.16.

[2]  Charles E. Yeager is referred to in the record and popularly known as General Chuck Yeager, the decorated World War II combat ace and Cold War test pilot.  In more recent years he has become enmeshed in many lawsuits, some of which have reached this court.

[3]  It may be, as Holt claims, that the Yeagers have filed *baseless* litigation, but an anti-SLAPP motion is not the right vehicle to litigate this case.  The trial court pointed out at the hearing that claim or issue preclusion might bar this suit or Holt might have a claim for malicious prosecution.  We express no view on these points, but note with disapproval the ad hominem attacks against Yeager made by Holt in the trial court and on appeal.  "Trying to win an argument by calling your opponent names . . . only shows the paucity of your own reasoning." (*Huntington Beach City Council v. Superior Court* (2002) 94 Cal.App.4th 1417, 1430.)  We deny Holt's requests for judicial notice of other cases declaring one or both of the Yeagers to be vexatious litigants, as that material was not before the trial court when it made the order under review. (See *City of Petaluma v. Cohen* (2015) 238 Cal.App.4th 1430, 1438, fn. 7.)

# BACKGROUND

The Yeagers are represented on appeal, but were self-represented in the trial court.

*The Operative Complaint*

The first amended complaint generally alleged that both Peter and Bethany Holt worked together at the Holt Law Firm in some capacity and that all three defendants were responsible for all of the actions and damages alleged.

The first claim, captioned "Breach of Fiduciary Duty," alleged Holt failed to communicate about the costs and risks of further litigation, concealed facts and acted negligently in discharging professional obligations. As an example, Peter Holt refused to sign a declaration supporting a motion for attorney fees in *Yeager v. AT&T Mobility* (E.D.Cal., Nov. 21, 2007, No. Civ. 07-2517), although Holt claimed in *Holt v. Yeager* that he was owed those same fees (inferentially, that he had in fact performed services for Yeager in that matter). This refusal allegedly resulted in Yeager not being awarded those fees in *Yeager v. AT&T Mobility*.

The second claim, captioned "Misrepresentation," incorporated prior allegations and alleged Holt misrepresented Holt's abilities and "the truth about payment" for services Yeager performed for Holt; however, no further details are alleged.

The third claim, captioned "Breach of Oral Contract," alleges Holt told General Yeager that Holt would pay for "various benefits and services" (otherwise undescribed) from Yeager, but breached this oral contract. It also alleged Holt represented that the firm would work on a pro bono basis, but did not do so.

The fourth claim, captioned "Misappropriation of Name," alleged that Holt used General Yeager's name on the firm's website without permission.

The fifth claim, captioned "Professional Negligence," alleged negligent representation in *Yeager v. AT&T Mobility*, but the only specific failing described was the alleged failure to sign the declaration supporting the motion for attorney fees.

3

*Special Motion to Strike*

After Holt had venue transferred, Holt filed the instant motion, claiming the suit was based on Peter Holt's successful suit for fees in *Holt v. Yeager*, and that his fee litigation was an "exercise of the Constitutional right of petition." As relevant here, he also alleged Yeager had no probability of success in this suit.

Holt alleged he briefly represented Yeager in 2009 and successfully sued Victoria Yeager in Nevada County for his fees (some $11,000), and defended the judgment on appeal to the Appellate Department of the superior court. Yeager had deposited nearly $17,000 with the court to forestall enforcement pending that appeal. (See Code Civ. Proc., § 917.1.)[4] Victoria Yeager appears to have been represented by two different attorneys at different times during *Holt v. Yeager*. When Holt moved to release the deposited money, Yeager opposed his efforts while self-represented, including filing the original complaint in this case, and threatening to sue him "anew" if he prevailed. Holt was then sued herein. Because the operative complaint references actions in the collection case, Holt argued that it was based on his protected right to petition, i.e., to sue for his fees. Holt presented voluminous evidence to try to show that this suit lacks merit.

Holt's evidentiary submission in support of his motion shows that the court in *Holt v. Yeager* rejected Victoria Yeager's claim that Holt had agreed to work pro bono, and awarded Holt quantum meruit damages. In response to Holt's motion to release deposited funds, Victoria raised the claims of malpractice and breach of duty and misappropriation that are raised in this case, stated an intent to sue Holt for malpractice, and later Yeager filed the original complaint herein. Victoria opposed the motion to release the funds in part because "[t]he funds should remain with this Court until the directly related case [i.e., *Yeager v. Holt*] is finally adjudicated." She also suggested

---

[4] Undesignated statutory references are to the Code of Civil Procedure.

4

General Yeager should have been named in *Holt v. Yeager*. She offered that if Holt paid the deposited money directly to charity and did not discuss the Yeagers with other people, no further litigation would ensue; otherwise Holt would be sued in "a related case."

Holt tried to get Bethany Holt out of this case by filing a declaration that--if believed--showed that she had nothing to do with the Holt Law Firm.

*Opposition*

Yeager opposed the motion, in part arguing the operative complaint was not based on Holt's protected conduct or expression, as neither misappropriating General Yeager's likeness nor the claims of malpractice and other professional failings were protected activities. Holt had represented Yeager in at least two matters, the *Fort Knox* and *AT&T Mobility* cases, each of which claimed that companies used General Yeager's fame for commercial purposes. Victoria filed a declaration asserting that both Peter and Bethany Holt had told her that Bethany Holt worked in the firm and that Victoria had discussed legal matters with Bethany Holt. The opposition contended that at least some of Holt's alleged improper actions occurred *after Holt v. Yeager* was tried.

*Reply*

Holt's reply asserted the opposition "makes granting the motion easy" because it did not rebut his claim that the action arose from protected activity, thereby shifting the burden to Yeager to show a probability of success, which Yeager had not done via admissible evidence. Holt elaborated on his legal theories, which are replicated on appeal and which we address in the Discussion, *post*.

*Trial Court Ruling and Appeal*

The trial court denied Holt's motion. The court found Yeager's malpractice claims did not chill Holt's right to sue Yeager. Nor did the misappropriation claim raise an issue of public interest because Yeager's claims of improper use of his fame for Holt's commercial purposes reflect a private dispute. Similarly, breaching an alleged contract to

5

provide pro bono services did not arise from a protected activity.  Based on these rulings, the court did not need to address whether Yeager had showed a probability of success.

Holt timely appealed.  The appeal lies.  (See § 425.16, subd. (i).)

## DISCUSSION

The purpose of anti-SLAPP motions is to weed out lawsuits designed to stifle free speech or lawful expressive conduct.  There is a two-step analysis.  First, the trial court determines whether the movant has shown the action implicates protected speech or conduct.  Second, if that has been shown, the court evaluates whether the opponent meets certain criteria, including showing a probability of prevailing.  (See 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 1017, pp. 426-428; 1 Schwing, Cal. Affirmative Defenses (2d ed. 2017) Lack of Required Certificate etc., § 12:38, pp. 807-855.)

Holt's motion trips on the first step.

We certainly accept Holt's point that suing someone is an aspect of the right to petition the government and is therefore a protected activity.  (See *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115; *Wolfgram v. Wells Fargo Bank* (1997) 53 Cal.App.4th 43, 50-55 [in the vexatious litigant context].)  Holt's filing and prosecution to completion of *Holt v. Yeager* was protected conduct.

But our Supreme Court has emphasized that "a claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity.  Rather, a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted."  (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060; see *Greco v. Greco* (2016) 2 Cal.App.5th 810, 819-820; *Ulkarim v. Westfield LLC* (2014) 227 Cal.App.4th 1266, 1274.)  " 'In order for a complaint to be within the anti-SLAPP statute, the "critical consideration is whether the cause of action is based on the defendant's protected free

6

speech or petitioning activity." [Citation.] To make that determination, we look to the "principal thrust or gravamen of the plaintiff's cause of action." [Citations.]' " (*Central Valley Hospitalists v. Dignity Health* (2018) 19 Cal.App.5th 203, 217 (*Central Valley*); see *Ulkarim*, at p. 1274.)

Holt claims that this suit is based on statements "made in judicial proceedings, and statements made in connection with issues under review by courts." He makes much of the fact that in ruling on an anti-SLAPP motion the trial court must consider the evidence submitted in connection with the motion, and not merely examine the face of the complaint. The statute does provide that both the pleadings *and* the evidence shall be considered by the trial court. (§ 425.16, subd. (b)(2); see *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon*).) But evidence in this context helps clarify the true nature of the dispute, it does not mean a trial court (or an appellate court) should ignore the gravamen or principal thrust of the allegations in the complaint. (See *Central Valley*, *supra,* 19 Cal.App.5th at p. 217 [" '[t]he question is what is pled— not what is proven' "].) Holt's evidence may show legal and factual infirmities in this lawsuit, but does not bolster Holt's anti-SLAPP motion, particularly given that Yeager alleges at least some of Holt's improper actions were taken *after* the trial in *Holt v. Yeager* was conducted.

It is possible that some of Yeager's malpractice claims *might* have been alleged in defense of the *Holt v. Yeager* lawsuit for fees, and the Yeagers may have brought this lawsuit to recover all or part of the fees litigated in *Holt v. Yeager.* Although these possibilities may raise legal bars for the Yeagers in this case, as Holt urges and as the trial court posited (see fn. 3, *ante*), that potential does not make this an anti-SLAPP case. Holt insists his refusal to sign a fee declaration for use in federal court was protected activity, but whether that decision was or was not malpractice (or whether the claim is time-barred, as Holt contends) is not resolvable in an anti-SLAPP case. And even if this case is found (in whole or in part) to be frivolous, vexatious, or untimely (based on the date of

7

termination of the attorney-client relationship), as Holt variously contends, that does not mean it chills expressive conduct. Nor does the fact that the complaint is vague help Holt. His view is that because the Yeagers are disgruntled at having lost *Holt v. Yeager,* their suit *must have been* an effort to punish Holt for suing them.

Like the trial court, we find it difficult to see how suing an attorney for malpractice, breach of contract, and using a client's name or likeness for commercial purposes, attacks expressive activity for anti-SLAPP purposes, particularly when some of the alleged improper conduct occurred after a prior lawsuit was tried.

The cases cited by the trial court--and *many* others--hold that a typical attorney malpractice suit is not subject to the anti-SLAPP procedures. (See *Loanvest I, LLC v. Utrecht* (2015) 235 Cal.App.4th 496, 504 ["claiming that the attorney breached fiduciary obligations to the client as the result of a conflict of interest or other deficiency in the representation of the client . . . does not threaten to chill the exercise of protected rights and the first prong of the anti-SLAPP analysis is not satisfied"]; *Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 491 ["A growing body of case law holds that actions based on an attorney's breach of professional and ethical duties owed to a client are not SLAPP suits, even though protected litigation activity features prominently in the factual background"]; *Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1391-1393 [where attorney concealed representation of an adverse party in order to obtain damaging sensitive information from plaintiffs, their suit for concealment and fraud was not subject to an anti-SLAPP motion]; *PrediWave Corp. v. Simpson Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1226-1227 ["the principal thrust of PrediWave's causes of action is that defendants simultaneously represented both PrediWave and Qu in matters in which they had an irreconcilable conflict of interest. This conflict of interest allegedly adversely affected defendants' choice of legal strategy;" suit was not brought "to deter the speech and petitioning activities done by their own attorneys on their behalf but rather to complain about the quality of their former attorneys' performance"];

8

*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272 ["the gravamen of Hylton's claims is that Rogozienski engaged in nonpetitioning activity inconsistent with his fiduciary obligations owed to Hylton"]; *Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, 630 ["It does not follow . . . that a legal malpractice action may be subject to a SLAPP motion merely because it shares some similarities with a malicious prosecution action and involves attorneys and court proceedings"]; see also *Ulkarim v. Westfield LLC*, *supra*, 227 Cal.App.4th at p. 1281 [suit against landlord did not attack acts of serving and filing a notice of termination, but "the underlying decision to terminate" the tenancy].)

And the fact that General Yeager is famous does not mean his claim of misappropriation of his name or likeness is *itself* a matter of public interest.  (See, e.g., *Albanese v. Menounos* (2013) 218 Cal.App.4th 923, 934 [rejecting view that "that any statement about a person in the public eye is sufficient to meet the public interest requirement"]; *D.C. v. R.R.* (2010) 182 Cal.App.4th 1190, 1226 ["No authority supports the . . . broad proposition that anything said or written about a public figure or limited public figure in a public forum involves a public issue"]; *Dyer v. Childress* (2007) 147 Cal.App.4th 1273, 1280 [defamation and false light action did not raise an issue of public interest; "the representation of Troy Dyer as a rebellious slacker is not a matter of public interest and there is no discernable public interest in Dyer's persona.  Although [the film *Reality Bites*] may address topics of widespread public interest, defendants are unable to draw any connection between those topics and Dyer's defamation and false light claims"]; *Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 187-191 [personal injury suit partly alleging misleading product advertising and labeling was not an anti-SLAPP suit]; *Consumer Justice Center v. Trimedica International, Inc.* (2003) 107 Cal.App.4th 595, 600-602 [suit about false advertising not a matter public interest].)

Holt points to *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628 (*Wollersheim*) to support his view that Yeager's *motives* to circumvent the judgment in

*Holt v. Yeager* show that this case is an effort to chill his right to sue them.[5] *Wollersheim* is distinguishable from this case.

After bitter litigation opposed by the Church of Scientology in state and federal courts (including suing judges who made adverse rulings against it), Wollersheim won a judgment and defended it on appeal after the Church's petition for writ of certiorari to the United States Supreme Court was denied. (*Wollersheim*, *supra*, 42 Cal.App.4th at pp. 636-637, 640-641.) Meanwhile, the Church had filed a separate suit seeking to set aside that judgment, based on purportedly newly discovered evidence about judicial bias and misconduct in the underlying case. (*Id.* at pp. 637-639.) Wollersheim moved to strike under section 425.16, submitting evidence of the Church's extraordinary efforts to interfere with the judicial process in the underlying lawsuit. This included evidence of Church doctrine that declared its perceived enemies to be "fair game" against whom it was acceptable to use illegal means, including knowingly subverting the judicial system. (*Id.* at pp. 639-642.) Wollersheim also produced evidence tending to show a Church member drowned a judge's dog, attempts were made to intimidate jurors, a Church member raided Wollersheim's lawyer's trash, and a Church member tried to obtain employment in and thereby infiltrate his law office, all to undermine Wollersheim's underlying case. (*Id.* at pp. 643-644.)

Thus *Wollersheim* involved *extra-judicial* efforts to derail Wollersheim's lawsuit, thereby directly interfering with his right to seek redress from the courts. It was with that backdrop that *Wollersheim* stated: "When a party to a lawsuit engages in a course of oppressive litigation conduct designed to discourage the opponents' right to utilize the courts to seek legal redress, the trial court may properly apply section 425.16. We hold

---

[5] Our Supreme Court disapproved *Wollersheim* to the extent it implied an intent to chill expression is *required* by section 425.16. (See *Equilon*, *supra*, 29 Cal.4th at p. 68, fn. 5.)

10

that in making that determination, the trial court may properly consider the litigation history between the parties." (*Wollersheim*, *supra*, 42 Cal.App.4th at pp. 648-649.)

We reject Holt's effort to equate this case with *Wollersheim*. True, the evidence Holt tendered may ultimately show that *Yeager v. Holt* is barred at least in part by *Holt v. Yeager*, as posited by the trial court. (See fn. 3, *ante*.) And clearly Holt's evidence shows Yeager is not shy about suing former attorneys. But nothing tendered by Holt shows that Yeager has used extra-judicial means to thwart justice as occurred in *Wollersheim*; instead, Yeager has filed a single lawsuit against Holt in the exercise of Yeager's own right to petition, a suit that can be adjudicated in the ordinary manner and that in part alleges conduct occurring after *Holt v. Yeager* was tried.

Yeager may not have pressed his claims of malpractice and overbilling properly. He might have sought mandatory fee arbitration. (See 1 Witkin, *supra*, Attorneys, § 229, pp. 301-302 ["Evidence relating to claims of malpractice and professional misconduct may be received by the arbitrators only to the extent the claims bear on the fees or costs to which the attorney is entitled;" i.e., affirmative relief against the attorney cannot be awarded].) He might have raised an affirmative defense or cross-claim or both alleging malpractice and so forth in *Holt v. Yeager*. (*Id.* at § 202(3) [in a civil suit for recovery of fees "a client may offer evidence of negligence of the attorney by way of reducing the amount recoverable"].) The statement of decision in *Holt v. Yeager* does not indicate Victoria Yeager (the sole defendant therein) did any of those things. But we fail to see how the mere fact that the Yeagers instead filed a separate lawsuit alleging malpractice and other claims--including post-*Holt v. Yeager* claims--against Holt threatens Holt's expressive rights, the evil against which the anti-SLAPP procedure provides a bulwark. (See *Hewlett-Packard Co. v. Oracle Corp.* (2015) 239 Cal.App.4th 1174, 1184 ["we have seen far more anti-SLAPP motions in garden-variety civil disputes than in cases actually resembling the [intended] paradigm"]; *Gaynor v. Bulen* (2018) 19 Cal.App.5th 864, 869-870 [breach of trust litigation]; *Greco v. Greco*, *supra*, 2 Cal.App.5th at pp. 824-825.)

11

Most anti-SLAPP motions (and their attendant appeals) result in delay, because the case is on hold until the SLAPP motion is resolved. (See, e.g., *Central Valley*, *supra*, 19 Cal.App.5th at pp. 222-223; *Grewel v. Jammu* (2011) 191 Cal.App.4th 977, 997-1003; *People ex rel. Lockyer v. Brar* (2004) 115 Cal.App.4th 1315, 1319 ["the defendant gets a very cheap hiatus in the proceedings"].)[6] As one court aptly stated:

> "The obvious example [of abuse of the anti-SLAPP statute] is found in the numerous cases that involve complaints that simply do not 'arise from' protected activity, but generate anti-SLAPP motions nevertheless. *Examples include actions against attorneys.* (*Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1539 [' "garden variety' attorney malpractice" ']; *Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179, 1187 [duty of loyalty] [citations.].)" (*Grewel v. Jammu*, *supra*, 191 Cal.App.4th 999, italics added.)

Although there may be sound reasons why this case will not succeed, either in whole or in part, filing an anti-SLAPP motion was not an effective way to litigate it.[7]

---

[6] The denials of certain kinds of anti-SLAPP motions are no longer subject to the automatic stay that applies to appeals in the ordinary anti-SLAPP case. (See § 425.17; *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 194-196.)

[7] Holt points to Bethany Holt's declaration that she is not involved with the law firm and claims she is being harassed by Yeager. But Victoria Yeager's declaration contested the point and we cannot resolve that dispute on appeal.

**DISPOSITION**

The judgment is affirmed.  Holt shall pay Charles and Victoria Yeager's costs of this appeal.  (See Cal. Rules of Court, rule 8.278.)

                                                            /s/

                                                       Duarte, J.

We concur:

/s/

Raye, P. J.

/s/

Robie, J.