Filed 5/15/23  Espinoza Bail Bonds, Inc. v. Chuang CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| ESPINOZA BAIL BONDS, INC., et al., | C095258 |
| Plaintiffs, Cross-defendants and Respondents, | (Super. Ct. No. CV-2021-0958) |
| v. | |
| RONALD Y. CHUANG et al., | |
| Defendants, Cross-complainants and Appellants. | |

This appeal challenges the trial court's grant of a special motion to strike pursuant to Code of Civil Procedure section 425.16, the anti-SLAPP statute,[1] directed at a cross-complaint filed by Linda and Ronald Chuang (the Chuangs), asserting causes of action

---

[1]  SLAPP is an acronym for "strategic lawsuit against public participation."

Undesignated statutory references are to the Code of Civil Procedure.

1

for financial elder abuse arising out of a breach of contract action brought by Espinoza Bail Bonds, Inc. (Espinoza Bail Bonds) as well as certain actions taken by bail agents when taking the Chuangs' son, Ted Chuang, into custody. We affirm in part and reverse in part.

To the extent the anti-SLAPP motion was granted as to the Chuangs' elder abuse claims arising out of the protected activity of filing a lawsuit, we affirm. To the extent the motion was granted as to the Chuangs' claims arising out of the unprotected activities of the bail agents, we reverse. We also reverse the trial court's subsequent order awarding attorney fees and remand the matter for reconsideration of the fee award.

## BACKGROUND

In March 2015, Espinoza Bail Bonds posted a $500,000 bond for Ted.[2] The Chuangs signed indemnity agreements obligating them to, among other things, ensure Ted appeared in court as required by the trial court; indemnify the surety, Lexington National Insurance Corporation (Lexington National), against any losses, including forfeiture of the bond; and pay a fugitive recovery fee in the event of such a forfeiture. Between March 2015 and April 2017, the Chuangs paid the $35,000 bond premium in full.

On September 27, 2017, Ted did not appear for a settlement conference. The trial court ordered Ted to appear on October 5, 2017, at 1:00 p.m. or have a warrant issued for his arrest. When Ted did not appear for that court date, the trial court issued the promised warrant and "forfeit[ed] the cash bail." The next day, Espinoza Bail Bonds and Lexington National were notified "that bail in the above-entitled case was ordered forfeited" but "the forfeiture of bail may be set aside" under the procedure set forth in Penal Code section 1305, et seq.

---

[2] To limit any confusion, we refer to Ted Chuang by his first name.

On March 8, 2018, bail agents took Ted into custody at the Chuangs' home, forcing their way into the home, using pepper spray to deter resistance, injuring Ted and another family member, and damaging portions of the home. The Chuangs secured Ted's subsequent release through a different bail bond company.

In May 2018, Espinoza Bail Bonds sent the Chuangs a bill in the amount of $5,060, comprised of a fugitive recovery fee ($5,000) and a miscellaneous fee for filing a motion ($60). The Chuangs disputed that they owed this amount and did not pay the bill.

In August 2019, all pending cases against Ted were dismissed and all bail bonds exonerated.

*The Operative Complaint and Cross-Complaint*

In May 2021, Espinoza Bail Bonds sued the Chuangs for breach of contract, seeking damages in the amount of $5,060. The complaint alleges this amount was owed as unpaid "premiums on said bond." The Chuangs answered the complaint, asserting among other things, that the premiums on the bond had been paid in full.

In July 2021, the Chuangs filed a cross-complaint against Espinoza Bail Bonds and Jose Espinoza (collectively, cross-defendants), alleging two causes of action for financial elder abuse in violation of Welfare and Institutions Code section 15610.30. The causes of action were identical, except that the first alleged Ronald Chuang as the victim and the second alleged Linda Chuang as the victim. The Chuangs alleged they were each over 65 years of age at the time of the alleged events. They also alleged that cross-defendants "took over or appropriated" their house " 'for a wrongful use or with intent to defraud, or both,' " on March 8, 2018, when bail agents entered, and "also destroyed," the house in order to take Ted into custody "to exonerate a bond that had already been exonerated as a matter of law." The Chuangs also alleged that cross-defendants continued in their "attempts to defraud the elder[s] of personal property (money) after the events of March 8, 2018" by attempting to collect "the unowed debt" noted above and "the filing of the instant complaint." They further alleged that cross-defendants knew or

3

should have known that their conduct at the house, their debt collection attempts, and the filing of the lawsuit "was likely to be harmful to the elder[s]." Among other things, the Chuangs sought injunctive relief enjoining cross-defendants from engaging in harassment, compensatory and punitive damages, costs of suit, and attorney fees.

*The Anti-SLAPP Motion*

In August 2021, cross-defendants filed an anti-SLAPP motion directed at the cross-complaint. Cross-defendants argued the cross-complaint arose from protected activity because the gravamen of the financial elder abuse causes of action was that Espinoza Bail Bonds filed a lawsuit against the Chuangs to collect a fee for returning Ted to custody. Cross-defendants also argued the litigation privilege protected the bail agents' activities in the house while taking Ted into custody and that such agents have historically been afforded qualified immunity. With respect to whether the Chuangs had a probability of proving the elements of financial elder abuse, cross-defendants argued the Chuangs could not prove that cross-defendants appropriated their real property at all, or that any asserted appropriation of the house was for a wrongful use or fraudulent purpose, as opposed to the lawful purpose of returning Ted to custody. In support of the latter argument, cross-defendants pointed out the indemnity agreements signed by the Chuangs expressly allowed bail agents to enter their house for purposes of fugitive recovery. Cross-defendants further argued the Chuangs could not prove damages.

In opposition to the anti-SLAPP motion, the Chuangs argued: (1) the indemnity agreements they signed were invalid because Espinoza Bail Bonds did not exist as a valid legal entity at the time; (2) the $500,000 bond was unlawfully "stacked" with other bonds, rendering the bond "void from the outset"; (3) the trial court acted in excess of its jurisdiction when it declared Ted's bail forfeited on October 5, 2017, and therefore, the "$500,000 bond was exonerated as a matter of law before the events of March 8, 2018"; (4) the anti-SLAPP statute "does not protect frivolous legal actions," such as the underlying breach of contract lawsuit; (5) the anti-SLAPP statute does not protect

4

criminal activity, such as the actions of the bail agents on March 8, 2018; (6) the litigation privilege also does not apply; (7) the bail agents cannot enjoy immunity for their "totally lawless acts"; and (8) the Chuangs will prevail on their financial elder abuse causes of action because (a) they were both over the age of 65 years on March 8, 2018, (b) the bail agents " 'appropriated' (and destroyed) [the Chuang's] real property 'for wrongful use' (to exonerate a bond which was already exonerated as a matter of law prior to March 8, 2018)," and (c) Jose Espinoza knew the bond was both void and exonerated when he nevertheless "decided to 'recover' [Ted] and charge [the Chuangs] $5,000 for said 'recovery,' " ultimately resulting in the "frivolous lawsuit . . . claiming that [the Chuang's] premium amount was unpaid, when there is no unpaid premium."

In reply, cross-defendants addressed each of the foregoing arguments. We need not recount the points made in reply in any detail. It suffices to note that cross-defendants argued "[t]his is a classic Strategic Lawsuit Against Public Participation" because the Chuangs "filed the [cross-complaint] for the sole purpose of intimidating [Espinoza Bail Bonds] from pursuing their fee claim against them." Cross-defendants further argued the Chuangs had not demonstrated a probability of prevailing on the merits of their causes of action.

*Hearing on the Motion*

A hearing on the anti-SLAPP motion was held in September 2021. While the Chuangs were primarily self-represented in the trial court, and are also representing themselves on appeal, counsel appeared at the hearing on their behalf for the limited purpose of arguing against the motion. Counsel argued the financial elder abuse causes of action were "mixed" in the sense of including "both protected and unprotected activity." Counsel argued the "bulk of the causes of action" were based on unprotected activity occurring when the bail agents took Ted into custody at the Chuangs' home, "barging into [their] home, tear gassing them, throwing them around, . . . having them watch their son being beaten and tased." Counsel argued the trial court should "scratch

5

the protected activity" (i.e., the filing of the debt collection lawsuit, as a basis for the causes of action), "and then leave the rest to survive." Counsel further argued that the allegations regarding the filing of the lawsuit were "incidental or collateral" allegations, and therefore, the anti-SLAPP statute did not apply at all.

In response, cross-defendants disputed the assertion that the filing of the lawsuit was collateral to the financial elder abuse causes of action, pointing out "there are 14 separate allegations against [cross-defendants] for filing a lawsuit," and arguing: "There is no question that the purpose of this cross-complaint is retaliation. That is strictly forbidden under the anti-SLAPP statute." Cross-defendants also argued the Chuangs had not shown "how [they] could possibly prevail" on their causes of action.

*The Trial Court's Ruling*

After taking the matter under submission, the trial court issued a written ruling granting the anti-SLAPP motion. The court explained that the financial elder abuse causes of action "seek relief based on protected and unprotected activities," which the court concluded required it to move to the second stage of the analysis and determine whether the Chuangs possessed a probability of prevailing on these causes of action. The court concluded they did not, explaining the Chuangs had "failed to demonstrate how entering their residence, breaking down their door, and otherwise damaging their house deprived them of their property right to the residence."

The Chuangs timely appealed. After delays for preparation of the record as well as multiple continuances in the briefing schedule at appellants' request, the case was fully briefed on January 25, 2023, and assigned to the panel as presently constituted on March 1, 2023.

DISCUSSION

Section 425.16 provides in relevant part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection

6

with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) "The anti-SLAPP statute . . . treats complaints identically with cross-complaints" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 77), providing " 'plaintiff' includes 'cross-complainant' and . . . 'defendant' includes 'cross-defendant' . . . ." (§ 425.16, subd. (h)).

"The purpose of anti-SLAPP motions is to weed out lawsuits designed to stifle free speech or lawful expressive conduct." (*Yeager v. Holt* (2018) 23 Cal.App.5th 450, 456.) Our Supreme Court has clarified the two-step process for litigating such a motion: "First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' [Citation.] Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit." ' [Citation.] If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).)

This is a first-step case. Only those claims "arising from any act . . . in furtherance of the . . . right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue" are "subject to a special motion to strike" under the anti-SLAPP statute. (§ 425.16, subd. (b)(1).) Thus, the first step of the analysis requires us to determine whether the Chuangs' claims arise from protected activity. "At this first step, courts are to 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.] The defendant's burden is to identify what acts each challenged

7

claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." (*Bonni*, *supra*, 11 Cal.5th at p. 1009.)[3]

As relevant here, section 425.16, subdivision (e) provides: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; . . . (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

The cross-complaint asserts two causes of action for financial elder abuse. "[F]inancial abuse of an elder occurs when any person or entity takes, secretes, appropriates, or retains real or personal property of an elder adult to a wrongful use or with an intent to defraud, or both." (*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 174.) The factual bases for these causes of action are the following: (1) the filing of the breach of contract lawsuit; (2) other debt collection activities, such as the making of threatening phone calls; and (3) the conduct of the bail agents when taking Ted into custody at the Chuangs' house.

The Chuangs concede the first factual basis amounts to protected activity, and we agree. " 'The filing of lawsuits is an aspect of the First Amendment right of petition' [citation], and thus is a protected activity under the anti-SLAPP statute." (*Sheley v. Harrop* (2017) 9 Cal.App.5th 1147, 1165.)

---

[3] Although *Bonni* was decided prior to the filing of any appellate briefing in this case, neither party's briefing cites it and, tellingly, respondents/cross-defendants make no attempt to distinguish the analysis and holding in *Bonni* from the instant case in their briefing.

The Chuangs argue, however, that the third factual basis--the conduct of the bail agents--is unprotected by the anti-SLAPP statute, and the claim based on this alleged conduct should have survived the anti-SLAPP motion.[4] Cross-defendants disagree, arguing only that "nothing in the [financial elder abuse causes of action] is unprotected because every word is based on their claim to interfere [in] a lawsuit filed by [Espinoza Bail Bonds] to collect a fee." We agree with the Chuangs.

Where, as here, an anti-SLAPP motion has been filed to strike an entire cause of action, a court must "examine the underlying acts individually" rather than seeking to ascertain "the 'gravamen' or 'principal thrust' of the cause of action." (*Bonni*, *supra*, 11 Cal.5th at pp. 1009-1010.) "Analysis of an anti-SLAPP motion is not confined to evaluating whether an entire cause of action, as pleaded by the plaintiff, arises from protected activity or has merit. Instead, courts should analyze each claim for relief—each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite degree of merit to survive the motion." (*Bonni*, at p. 1010, citing *Baral v. Schnitt* (2016) 1 Cal.5th 376, 393-395.) And where, as here, protected and unprotected acts are alleged as bases for the cause of action, the claims arising from unprotected activity are "disregarded" (*Baral*, at p. 396), and the second step of the analysis is reached only with respect to "each claim that does arise from protected activity." (*Bonni*, at p. 1009.)

---

[4] The Chuangs' appellate briefing does not argue the second factual basis is either unprotected activity, and therefore not subject to the anti-SLAPP statute, or if protected activity, they could nevertheless prevail on a claim of financial elder abuse based on debt collection letters and phone calls. Any argument in this regard is therefore forfeited; thus, we discuss it no further. *(Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as [forfeited]"].)

Here, while cross-defendants state in conclusory fashion that "nothing in the [financial elder abuse causes of action] is unprotected," they do not make a specific argument on appeal in support of a conclusion that the bail agents were engaging in protected activity when they took Ted into custody and damaged the Chuangs' house. Moreover, the trial court specifically concluded these activities are unprotected. We agree with the trial court's assessment.

In *Anderson v. Geist* (2015) 236 Cal.App.4th 79, the Fourth District Court of Appeal held execution of an arrest warrant by law enforcement officers was not protected activity under section 425.16, subdivision (e)(4). While execution of such a warrant "is of course 'an act in furtherance of a criminal prosecution,' " as the defendants argued in that case, the appellate court concluded "extending protections of the anti-SLAPP statute to such activity" would not serve the goals of the anti-SLAPP statute because "the execution of a warrant is not an exercise of rights by the peace officer; it is the performance of a mandatory duty, at the direction of the court." (*Id*. at pp. 86-87.) Moreover, section 425.16, subdivision (e)(4) requires the conduct to be "in connection with a public issue or an issue of public interest." This requirement was also not met where the arrest warrant that was executed was "a routine misdemeanor warrant in a case that apparently attracted precisely zero public interest or discussion." (*Id*. at p. 87.) The situation here is similar.

While Ted was arrested by bond agents seeking to protect their surety, rather than law enforcement officers performing their mandatory duties, we conclude the result is the same. Taking Ted into custody was not an exercise of constitutionally protected rights, but rather a business decision by cross-defendants authorized by the trial court's issuance of the warrant and the terms of the bail and indemnity agreements. Nor was returning Ted to custody following his failure to appear remotely connected to a public issue or an issue of public interest.

In sum, having correctly concluded the claim based on the bail agents' conduct at the Chuangs' house was unprotected, under *Bonni* the trial court was required to end the anti-SLAPP analysis with respect to that claim.

We need not address the second step of the anti-SLAPP analysis because that step is reached only with respect to "each claim that does arise from protected activity." (*Bonni*, *supra*, 11 Cal.5th at p. 1009.)  The Chuangs concede the claim based on the filing of the lawsuit arises from protected activity, and they do not assert on appeal that there is a probability they may prevail on this claim.  Thus, as the Chuangs acknowledge, the anti-SLAPP motion should have been granted, "but only in part."  The result is a partial affirmance and partial reversal of the order granting the anti-SLAPP motion.[5]

One item remains:  attorney fees.  After the trial court granted the anti-SLAPP motion, cross-defendants moved for attorney fees and costs pursuant to section 425.16, subdivision (c).  The trial court awarded $30,555.00 in attorney fees and $466.85 in costs.  On appeal, the Chuangs argue this amount should be reduced because the anti-SLAPP motion should not have been granted in its entirety, but only in part.  We conclude the fee award must be reversed and the matter remanded for reconsideration.

" 'An award of attorney fees to a partially prevailing defendant under section 425.16, subdivision (c) . . . involves competing public policies:  (1) the public policy to discourage meritless SLAPP claims by compelling a SLAPP plaintiff to bear a defendant's litigation costs incurred to eliminate the claim from the lawsuit; and (2) the public policy to provide a plaintiff who has facially valid claims to exercise his or her constitutional petition rights by filing a complaint and litigating those claims in court.

---

[5]  Whether the claim based on the bail agents' conduct should proceed to trial is not a matter for us to decide in this appeal.  We do note that cross-defendants have filed a demurrer to the cross-complaint.  In ruling on the demurrer, the trial court will be able to determine whether the remaining claim sufficiently states a cause of action for financial elder abuse.

[Citations.] In balancing these policies, . . . the court should first determine the lodestar amount for the hours expended on the successful claims, and, if the work on the successful and unsuccessful causes of action was overlapping, the court should then consider the defendant's relative success on the motion in achieving his or her objective, and reduce the amount if appropriate." (*Malin v. Singer* (2013) 217 Cal.App.4th 1283, 1305.)

Here, the trial court did not consider whether to reduce the fee award based on cross-defendants' partial success because, as is obvious, it granted the anti-SLAPP motion in its entirety. We express no opinion with respect to whether the fee award should be reduced. That is a matter for the trial court on remand.

## DISPOSITION

The order granting cross-defendants' anti-SLAPP motion is affirmed in part and reversed in part. To the extent the anti-SLAPP motion was granted as to the Chuangs' elder abuse claims arising out of the protected activity of filing a lawsuit, it is affirmed. To the extent it was granted as to their claims arising out of the unprotected activities of the bail agents, it is reversed. The trial court's subsequent order awarding attorney fees and costs is also reversed and the matter is remanded for reconsideration. The parties are to bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)


           /s/
           Duarte, Acting P. J.

We concur:


   /s/
Boulware Eurie, J.


   /s/
Mesiwala, J.

12