Filed 10/20/25 Neagu v. Kron CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CARMEN LUMINITA NEAGU,<br><br>    Cross-complainant and Appellant,<br><br>        v.<br><br>SCOTT ARON THOMPSON KRON et al.,<br><br>    Cross-defendants and Respondents. | G064978<br><br>(Super. Ct. No. 30-2024-01391937)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Sheila Recio, Judge. Reversed and remanded with directions.

Ford & Diulio and Kristopher P. Diulio for Cross-complainant and Appellant.

Law Offices of Stephen Abraham and Stephen E. Abraham for Cross-defendants and Respondents.

Cross-complainant Carmen Luminita Neagu appeals from an order granting an anti-SLAPP motion. (Code Civ. Proc., § 425.16.)[1] While the underlying dispute culminated in litigation, we conclude none of Neagu's claims for relief arise from protected activity. We must therefore reverse.

FACTS

Neagu leased a house to a substance use disorder treatment program. In 2023, a dispute arose about whether the tenants were honoring the lease and whether Neagu was "abus[ing]" her "landlord right to inspect" the property.

The tenants hired cross-defendants Scott Aron Thompson Kron and his law firm, Kron & Card LLP to represent them. We will refer to cross-defendants collectively as "the law firm."

The ensuing chain of events included: a contentious November 30, 2023 telephone call between Kron and Neagu; Neagu serving the tenants with a December 2023 three-day notice to quit; Kron filing a December 11, 2023 civil harassment restraining order petition; the law firm "prevent[ing]" Neagu and her real estate agent from inspecting the property on March 27, 2024; and Kron's physical presence at a March 29, 2024 inspection of the property noticed by Neagu.

After the tenants sued Neagu in April 2024, Neagu filed a cross-complaint alleging causes of action against the law firm for intentional interference with contractual relations, interference with prospective economic advantage, and unfair business practices.

These claims were supported by three types of acts.

---

[1] All undesignated statutory references are to the Code of Civil Procedure.

First, Neagu alleged the law firm "intentionally blocked and prevented Neagu and her agents from entering Neagu's property"; "engaged in intentional acts to prevent Neagu from entering the Subject Property and performing necessary repairs as provided by the Lease Agreement"; and "physically prevented Neagu from entering the Subject Property to perform necessary repairs of the Subject Property as provided for in the Lease Agreement."

Second, Neagu alleged the law firm threatened her agents. Specifically, Neagu alleged "Kron . . . threatened Neagu's real estate agent and broker that if they help[ed] Neagu with any inspections of the Subject Property, Kron and Kron & Card LLP will go after the real estate agent and the broker's businesses and will 'destroy' them financially"; on "[t]he day before [a scheduled] inspection Kron threatened Neagu's pool contractor not [t]o show up to the Subject Property to conduct repairs of the pool"; "[o]n July 26, 2024, . . . the day of the inspection, Kron once again threatened Neagu's pool contractor not to show up to the Subject Property"; and threatened to "'destroy' Neagu's agents financially."

Third, Neagu alleged the law firm threatened her personally. Specifically, Neagu alleged "Kron threatened Neagu that if Neagu continues to insist on conducting inspections and repairs of the Subject Property as she is contractually obligated to do, Kron will seek to have Neagu arrested"; and "that if Neagu does not 'back off' from continuing to ask to conduct inspections of her property and perform necessary repairs, Kron and Kron & Card LLP will 'come after' Neagu and 'will take' the Subject Property from Neagu."

The law firm filed an anti-SLAPP motion to strike all three causes of action asserted against it. A supporting declaration by Kron's

3

partner mentioned her many e-mails to Neagu but attached none. Kron's declaration mentioned his many e-mails to Neagu but attached only one e-mail thread.[2] Neagu filed an opposition with her own declaration.

The court granted the motion. It ruled that the challenged causes of action "are based on protected speech and that the evidence proffered does not show . . . a probability of prevailing on those causes of action."

DISCUSSION

"Resolution of an anti-SLAPP motion involves two steps." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) First, the defendant or cross-defendant must show that the challenged claim arises from protected activity. (*Ibid.*) Second, if the initial burden is met, the burden shifts to the plaintiff or cross-complainant to establish a probability of prevailing. (*Ibid.*)

The law firm does not identify what "set[s] of acts" underlie Neagu's "claim[s] for relief." (*Bonni v. St. Joseph Health System* (2021)

---

[2] In his first e-mail in that thread, Kron told Neagu that a building inspection would not occur and that "[t]respassing w[ould] be prosecuted to the fullest extent of the law." In his second e-mail, Kron asked Neagu to "stop lying" and continued: "I am not harassing you, you are harassing my client and the residents, and now you are harassing me by lying and trying to manipulate the facts. [¶] Please file a restraining order against me! I will win, and when I do, I will seek an award of attorney fees, and then I will sue you for malicious prosecution. [¶] You are too emotional, irrational, and unreasonable. You need to separate yourself from the situation. I urge you to seek counseling from a licensed attorney. This is your final warning. If you set foot on the property, trespass charges will be pursued, followed by a Petition for Civil Harassment Restraining Order and then a civil lawsuit for breach of the lease, breach of the covenant of quiet use and enjoyment, and housing discrimination, among other things."

11 Cal.5th 995, 1010 (*Bonni*).)[3] Nor does it specify which category of protected activity applies. (§ 425.16, subd. (e)(1)–(4).)

We will therefore ascertain the claims for relief ourselves and review "de novo whether any of the acts from which challenged claims arise are protected." (*Bonni, supra*, 11 Cal.5th at p. 1009.) The law firm may "rely on the [cross-complaint]'s allegations alone." (*Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 936 (*Bel Air*).) Or the parties may submit declarations to clarify ambiguous pleadings. (*Turnbull v. Lucerne Valley Unified School District* (2018) 24 Cal.App.5th 522, 533–535 (*Turnbull*).)

We discern three sets of alleged acts that "supply[] a basis for relief" in the cross-complaint (*Bonni, supra*, 11 Cal.5th at p. 1010): (1) "actions" by the law firm that "physically prevent[ed]" Neagu and her agents "from entering the . . . [p]roperty . . . to perform repairs"; (2) "threat[s]" directed at her pool contractor and real estate agent and broker (it is not clear whether the agent and broker are the same person); and (3) "threats" directed at her.

We interpret the law firm's contention that Neagu is "targeting opposing attorneys" as claiming protection under section 425.16, subdivision (e)(2), which protects "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body . . . ."

---

[3] The anti-SLAPP statute uses "cause of action" (§ 425.16, subd. (b)(1)) to mean a "claim for relief"—where "each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action," should be examined to decide whether the act or set of acts constitutes "protected activity." (*Bonni, supra*, 11 Cal.5th at p. 1010.)

*A. The Law Firm Has Not Shown Physically Preventing Access to the*
*Building Is Protected*

The subdivision on which the law firm apparently relies does not protect physical conduct. It protects only "any written or oral statement or writing . . . ." (§ 425.16, subd. (e)(2).) The anti-SLAPP statute protects "conduct" only if it furthers the rights to petition or free speech "in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).) The law firm has not explained how blocking access to the building contributes to the debate on any public issue. (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 149–151.) No public issue occurs to us.

We reject the law firm's overarching contention that anything falling within the litigation privilege (Civ. Code, § 47(b)) is automatically subject to anti-SLAPP protection.

The litigation privilege and the anti-SLAPP statute are "not co-extensive" (*Bailey v. Brewer* (2011) 197 Cal.App.4th 781, 794) as they serve "quite different purposes" (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 322 (*Flatley*)). While the litigation privilege may be an "aid . . . with respect to the first step," conduct falling within the privilege is not "necessarily protected under the anti-SLAPP statute." (*Id.* at pp. 323, 325.)

In any event, the litigation privilege generally does not cover "noncommunicative acts." (*Kimmel v. Goland* (1990) 51 Cal.3d 202, 205; *id.* at pp. 205–206 [no privilege for "illegal recording of confidential telephone conversations," even if done "in anticipation of suing"].) A fact-specific "exten[sion]" of the privilege can be made for "noncommunicative actions which are necessarily related to . . . communicative act[s]." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1052, 1056.) For example, the noncommunicative acts of "obtaining a writ of execution and levying on [a] judgment debtor's

property" are privileged because they necessarily relate to communicative court filings used to procure the judgment. (*Id.* at p. 1055.) The law firm relies on *Rusheen*. But we find physically blocking access to property is not remotely like obtaining a judgment and is not necessarily related to any protected communication.

*B. The Law Firm Has Not Shown the Threats Against Neagu's Agents Are Protected*

Next, we conclude the law firm has not met its first step burden on Neagu's allegations that the law firm allegedly threatened her pool contractor and the real estate agent and broker.

The law firm asserts that "[c]ounseling others in anticipation of litigation or encouraging others to sue is considered protected prelitigation activity." It cites to *Bel Air, supra*, 20 Cal.App.5th at p. 940, which protected statements "encourag[ing] fellow employees of Bel Air to quit and sue the company for alleged employment violations rather than sign a release of such claims that Bel Air requested." (*Id.* at p. 929.) *Bel Air* is of no help to the law firm because the cross-complaint does not allege the law firm counseled or encouraged Neagu's agents to sue. It alleges the law firm threatened them.

The law firm's declarations are silent on exactly what was said to Neagu's agents. It need not present evidence on that—the law firm is free to rely on the cross-complaint. (*Bel Air, supra*, 20 Cal.App.5th at p. 929.) But it is then bound by the cross-complaint's characterization of its statements.

When the pleading is "vague," "one can only speculate as to the basis" for the claim. (*Turnbull, supra*, 24 Cal.App.5th at p. 534.) "[I]t is difficult, if not impossible, to see how defendants" can meet the first prong burden "with plaintiff's failure to specifically plead" the statement. (*Martin v. Inland Empire Utilities Agency* (2011) 198 Cal.App.4th 611, 628; see *Yeager*

7

*v. Holt* (2018) 23 Cal.App.5th 450, 457 ["Nor does the fact that the complaint is vague help" defendant meet first prong], disapproved on another ground in *Bonni, supra*, 11 Cal.5th at p. 1010.)

Here, the cross-complaint vaguely alleges the law firm "threatened" to "go after" Neagu's agents and "'destroy' them financially." We cannot find this is protected.[4]

*C. The Law Firm Has Not Shown the Threats Against Neagu Are Protected*

Finally, we conclude the law firm has not met its burden on Neagu's allegations that the law firm threatened her.

Unlike the vague threats against Neagu's agents, here Neagu's declaration clarifies this claim for relief is based on a specific interaction—the contentious November 30, 2023 telephone call. That call occurred six days before Neagu sent the three-day notice to quit and 11 days before the law firm requested the restraining order against Neagu.

The parties describe that call differently. According to Neagu: "Kron called me and began threatening me that if I did not 'back off' he would 'come after' me and 'will take' my home from me. . . . Kron also threatened to have me arrested." According to Kron: "I called Neagu to address her ongoing harassment of [the tenants]. During the brief call, Neagu shouted at me and

---

[4] While the law firm characterizes all the allegedly protected statements as prelitigation, Neagu's cross-complaint specifies two post-litigation threats. The cross-complaint alleges the law firm threatened her pool contractor on July 25 and 26, 2024—after this litigation began in April 2024. Even so, we still conclude the law firm has not shown the threats were "made in connection with" a litigated issue. (§ 425.16, subd.(e)(2).) On the other hand, while Neagu invited us at oral argument to hold all the alleged threats were unprotected illegal activity (*Flatley, supra*, 39 Cal.4th at p. 320) there is neither a "concession" nor "uncontroverted and conclusive evidence" that the law firm's activity was "illegal as a matter of law" (*ibid.*).

refused to let me speak. In an effort to calm the situation and engage in a civil discussion, I asked her to 'stop' three times. She then hung up and subsequently sent me an email, falsely accusing me of screaming at her and threatening to have her arrested. Shortly thereafter, I sent Neagu a response to her misleading email."

We see two problems with finding Kron's statements protected.

First, Kron does not deny telling Neagu on the telephone he would "come after" her and "take" her home, as Neagu attested. Regardless of Kron's follow-up e-mail, it is still "unclear" whether Neagu's claim is based on the alleged telephonic threat, which does not "from the face of the" cross-complaint relate to litigation. (*Turnbull, supra*, 24 Cal.App.5th at p. 534.)

Second, even if the law firm alluded to litigation, it has not shown litigation was seriously contemplated in good faith at that time.

Communications ""'preparatory to or in anticipation of the bringing of an action or other official proceeding'"" are protected only when litigation is contemplated in ""'good faith and under serious consideration.'"" (*Bel Air, supra*, 20 Cal.App.5th at p. 940.) "The requirement to show that litigation is seriously contemplated ensures that prelitigation communications are actually connected to litigation and that their protection therefore furthers the anti-SLAPP statute's purpose." (*Id.* at p. 941.)

This requirement "exclud[es] from protection communications made when litigation is 'just a negotiating tactic or a hypothetical possibility.'" (*Medallion Film LLC v. Loeb & Loeb LLP* (2024) 100 Cal.App.5th 1272, 1285–1286 (*Medallion*).) For example, requesting a party "to perform its duties under [an] agreement" does not satisfy this requirement because "the 'possibility of litigation in the event of nonperformance is not enough.'" (*Id.* at p. 1287.) "[A] remote possibility [of

9

litigation] is not enough" because "[w]hen conduct "'will lead to litigation only if negotiations fail or contractual commitments are not honored, future litigation is merely theoretical.'"" (*Ibid*.)

Here, Kron's e-mail prefaces the references to potential litigation with the conditional phrase, "If you set foot on the property"—an apparent reference to the tenants' belief that the lease barred Neagu's inspections. Asking Neagu to "perform [her] duties under the" lease is "not enough" to show litigation is under serious, good faith consideration. (*Medallion, supra,* 100 Cal.App.5th at p. 1287.) The law firm was communicating with Neagu to **avoid** litigation. Had Neagu ""honored"" the ""contractual commitments"" asserted by the tenants, there would have been no litigation. (*Ibid*.) Thus, whatever ""future litigation"" the law firm may have mentioned to Neagu was still ""merely theoretical."" (*Ibid*.)

Finally, the law firm is not helped by citing *Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793. That case protected lawyer conduct consisting of "receiving and using confidential information" (*id.* at p. 813), gained through a past fiduciary relationship with the plaintiffs (*id.* at pp. 797–799), "to prepare for and prosecute litigation against [the] plaintiffs" (*id.* at p. 813). The case would not protect threats directed to Neagu.

That said, we fully recognize an anti-SLAPP analysis can be counterintuitive. There are cases where prelitigation statements and conduct are protected—and cases where they are not. We appreciate the work of counsel and the trial court on this challenging, technical issue.

10

## DISPOSITION

The order granting the anti-SLAPP motion is reversed. The court is directed to vacate that order and enter a new order denying the motion. Neagu shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).) We express no opinion on any fees or costs claimed pursuant to section 425.16, subdivision (c).


SCOTT, J.

WE CONCUR:


DELANEY, ACTING P. J.


BANCROFT, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11